SHARTSIS FRIESE LLP
ARTHUR J. SHARTSIS (Bar #51549)
ashartsis@sflaw.com
TRACY SALISBURY (Bar #106837)
tsalisbury@sflaw.com
One Maritime Plaza, Eighteenth Floor
San Francisco, CA  94111
Telephone:  (415) 421-6500
Facsimile:  (415) 421-2922

Attorneys for Defendants
ANHELO, L.L.C. and CERRALVO, L.L.C.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RVC CORPORATION, a Colorado Corporation and LEGATO DEVELOPMENT, L.L.C., a Delaware Limited Liability Company, <br><br> Plaintiffs, <br><br> v. <br><br> ANHELO, L.L.C., a Delaware Limited Liability Company and CERRALVO, L.L.C., a Delaware Limited Liability Company and CERRALVO DESARROADOR, S. de R.L. de C.V., a Mexican Limited Liability Company, <br><br> Defendants. | Case No.  CV 08 0975 EMC <br><br> **DEFENDANTS' ANSWER AND COUNTERCLAIM FOR DECLARATORY RELIEF** <br><br> Trial Date:        Not Yet Set <br> Complaint Filed:   February 15, 2008 |

Defendants Anhelo, L.L.C. ("Anhelo") and Cerralvo, L.L.C. ("Cerralvo") (together "Defendants"), in answer to the complaint of plaintiffs RVC Corporation ("RVC") and Legato Development, L.L.C. ("Legato") (collectively "Plaintiffs") pleads as follows:

1.    Answering paragraph 1, Defendants admit that Plaintiffs purport to state an action for breach of contract, breach of covenant of good faith and fair dealing and declaratory relief seeking specific performance and/or award of damages, but deny that Plaintiffs have any valid claim for relief against Defendants.  Except as expressly admitted herein, Defendants deny each and every allegation in paragraph 1.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111

1    2.    Answering paragraph 2, Defendants lack sufficient information or belief to admit

2  or deny the allegations in paragraph 2 and on that basis deny each and every such allegation.

3    3.    Answering paragraph 3, Defendants lack sufficient information or belief to admit

4  or deny the allegations in paragraph 2 and on that basis deny each and every such allegation.

5    4.    Answering paragraph 4, Defendants admit that Anhelo is a Delaware limited

6  liability company and that its members are JoMei Chang and Dale Skeen, who are citizens of

7  California and reside in San Mateo County, California.  Except as expressly admitted herein,

8  Defendants deny each and every allegation in paragraph 5.

9    5.    Answering paragraph 5, Defendants admit that Cerralvo is a Delaware limited

10  liability company and that its members are JoMei Chang and Dale Skeen, who are citizens of

11  California and reside in San Mateo County, California.  Except as expressly admitted herein,

12  Defendants deny each and every allegation in paragraph 5.

13    6.    Answering paragraph 6, Defendants admit that Cerralvo Desarrollador, S. de R.L.

14  de C.V. ("Cerralvo Mexico") is a Mexican limited liability company that owns certain real estate

15  consisting of approximately 2,000 acres in the municipality of La Paz, State of Baja California,

16  Mexico, the legal description of which is attached as Exhibit A to the complaint.  Defendants

17  admit that Anhelo and Cerralvo are the sole holders of all ownership interest in Cerralvo Mexico.

18  Except as expressly admitted herein, Defendants deny each and every allegation in paragraph 6.

19    7.    Answering paragraph 7, Defendants admit that the court appears to have diversity

20  jurisdiction over Anhelo and Cerralvo based on the allegations in the complaint, but deny that

21  Plaintiffs are entitled to damages at all or in any amount from Defendants.  Except as expressly

22  admitted herein, Defendants deny each and every allegation in paragraph 7.

23    8.    Answering paragraph 8, Defendants admit that the members of Anhelo and

24  Cerralvo reside in San Mateo County.  Except as expressly admitted herein, Defendants deny

25  each and every allegation in paragraph 8.

26    9.    Answering paragraph 9, Defendants admit that Anhelo executed the agreement

27  attached as Exhibit A to the complaint in San Mateo, California and that the principals of Anhelo

28  are residents of San Mateo County, California.  Defendants do not dispute the intra-district

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 2 -

DEFENDANTS' ANSWER AND COUNTERCLAIM FOR
DECLARATORY RELIEF

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    assignment of this action to San Francisco Division.  Except as expressly admitted herein,

2    Defendants deny each and every allegation in paragraph 9.

3        10.    Answering paragraph 10, Defendants admit that their members reside in San

4    Mateo County.  Except as expressly admitted herein, Defendants deny each and every allegation

5    in paragraph 10.

6        11.    Answering paragraph 11, Defendants lack sufficient information or belief to admit

7    or deny the allegations in paragraph 11 and on that basis deny each and every such allegation.

8        12.    Answering paragraph 12, Defendants admit that RVC, Legato, Anhelo and

9    Cerralvo entered into a "Purchase Agreement" dated September 23, 2005, and state that the

10   Purchase Agreement speaks for itself.  Except as expressly admitted herein, Defendants deny

11   each and every allegation in paragraph 12.

12       13.    Answering paragraph 13, Defendants admit that prior to the execution of the

13   Purchase Agreement, Legato claimed that it had options to purchase additional tracts of land

14   located adjacent to Rancho Vista Cerralvo and that it hoped that it would be able some day to

15   develop one or more of the tracts into a beach club and golf resort.  Except as expressly admitted

16   herein, Defendants deny each and every allegation in paragraph 13.

17       14.    Answering paragraph 14, Defendants state that the Purchase Agreement speaks for

18   itself.  Except as expressly admitted herein, Defendants deny each and every allegation in

19   paragraph 14.

20       15.    Answering paragraph 15, Defendants state that the Purchase Agreement speaks for

21   itself.  Except as expressly admitted herein, Defendants deny each and every allegation in

22   paragraph 15.

23       16.    Answering paragraph 16, Defendants state that the Purchase Agreement speaks for

24   itself.  Except as expressly admitted herein, Defendants deny each and every allegation in

25   paragraph 16.

26       17.    Answering paragraph 17, Defendants state that the Purchase Agreement speaks for

27   itself.  Except as expressly admitted herein, Defendants deny each and every allegation in

28   paragraph 17.

Case No.
CV 08 0975

DEFENDANTS' ANSWER AND COUNTERCLAIM FOR
DECLARATORY RELIEF

18.    Answering paragraph 18, Defendants admit that Anhelo funded the sum of $5,523,200 (including acquisition and holding costs actually advanced), plus additional costs and legal fees, under the Purchase Agreement and that, on closing, Cerralvo Mexico became the owner of the property known as Ranch Vista Cerralvo.   Except as expressly admitted herein, Defendants deny each and every allegation in paragraph 18.

19.    Answering paragraph 19, Defendants state that the Purchase Agreement and the letter dated September 21, 2006 speak for themselves.   Except as expressly admitted herein, Defendants deny each and every allegation in paragraph 19.

20.    Answering paragraph 20, Defendants state that the document dated November 11, 2006 speaks for itself.   Except as expressly admitted herein, Defendants deny each and every allegation in paragraph 20.

21.    Answering paragraph 21, Defendants admit that the letter dated November 14, 2006, was sent on their behalf, and state that the letter speaks for itself.   Except as expressly admitted herein, Defendants deny each and every allegation in paragraph 21.

22.    Answering paragraph 22, Defendants deny each and every allegation therein.

23.    Answering paragraph 23, Defendants state that the November 25, 2006 letter speaks for itself.   Except as expressly admitted herein, Defendants deny each and every allegation in paragraph 23.

24.    Answering paragraph 24, Defendants state that the letter dated November 29, 2006 speaks for itself.   Except as expressly admitted herein, Defendants deny each and every allegation in paragraph 24.

25.    Answering paragraph 25, Defendants state that the November 11, 25 and 29, 2006, documents speak for themselves. Except as expressly admitted herein, Defendants deny each and every allegation in paragraph 25.

26.    Answering paragraph 26, Defendants deny each and every allegation therein.

### FIRST CAUSE
### (Breach of Contract)

27.    Defendants hereby incorporate by reference, as if fully set forth herein, their

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1  answers to paragraphs 1 through 26 above, inclusive.

2      28.    Answering paragraph 28, Defendants state that the Purchase Agreement speaks for

3  itself.    Except as expressly admitted herein, Defendants deny each and every allegation in

4  paragraph 28.

5      29.    Answering paragraph 29, Defendants deny each and every allegation therein.

6      30.    Answering paragraph 30, Defendants deny each and every allegation therein.

7      31.    Answering paragraph 31, Defendants state that the Purchase Agreement speaks for

8  itself.    Except as expressly admitted herein, Defendants deny each and every allegation in

9  paragraph 31.

10     32.    Answering paragraph 32, Defendants deny each and every allegation therein.

11     33.    Answering paragraph 33, Defendants deny each and every allegation therein.

12     34.    Answering paragraph 34, Defendants deny each and every allegation therein, and

13  specifically deny that Plaintiffs have been damaged at all or in any amount by, or are entitled to

14  any relief whatsoever from, Defendants.

### SECOND CAUSE
**(Breach of Duty of Good Faith and Fair Dealing)**

17     35.    Defendants hereby incorporate by reference, as though fully set forth herein, their

18  answers to paragraphs 1 through 34 above, inclusive.

19     36.    Answering paragraph 36, Defendants state that this paragraph makes allegations of

20  law, which Defendants neither admit nor deny.    Except as expressly admitted herein, Defendants

21  deny each and every factual allegation stated or implied in paragraph 36.

22     37.    Answering paragraph 37, Defendants deny each and every allegation therein.

23     38.    Answering paragraph 38, Defendants deny each and every allegation therein.

24     39.    Answering paragraph 39, Defendants deny each and every allegation therein, and

25  specifically deny that Plaintiffs have been damaged at all or in any amount by, or are entitled to

26  any relief whatsoever from, Defendants.

27

28

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.
CV 08 0975

DEFENDANTS' ANSWER AND COUNTERCLAIM FOR
DECLARATORY RELIEF

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

## THIRD CAUSE
### (Request for Declaratory Relief 28 U.S.C. § 2201)

40.    Defendants hereby incorporate by reference, as though fully set forth herein, their answers to the paragraphs 1 through 39 above, inclusive.

41.    Answering paragraph 41, Defendants admit that an actual controversy now exists between Plaintiffs and Defendants, but state that the true and accurate statement of that controversy is alleged in Defendants' Counterclaim for Declaratory Relief herein.   Except as expressly admitted herein, Defendants deny each and every allegation in paragraph 41.

42.    Answering paragraph 42, Defendants deny each and every allegation therein.

## AFFIRMATIVE DEFENSES

By way of further answer and as affirmative defenses, Anhelo and Cerralvo allege as follows:

### FIRST AFFIRMATIVE DEFENSE

43.    The Complaint and each claim for relief therein are barred by the doctrine of laches.

### SECOND AFFIRMATIVE DEFENSE

44.    The Complaint and each claim for relief therein fail to state a claim upon which relief can be granted.

### THIRD AFFIRMATIVE DEFENSE

45.    The Complaint and each claim for relief therein are barred by Plaintiffs' unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

46.    The Complaint and each claim for relief therein are barred by the doctrine of waiver.

### FIFTH AFFIRMATIVE DEFENSE

47.    The Complaint and each claim for relief therein are barred by the doctrine of estoppel.

1

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

### SIXTH AFFIRMATIVE DEFENSE

48.    To the extent Plaintiffs have suffered damages as alleged in the Complaint, such damages were not caused by Defendants but by the intentional or negligent acts of Plaintiffs or others.

### SEVENTH AFFIRMATIVE DEFENSE

49.    Any recovery by Plaintiffs is barred and/or must be reduced as a result of Plaintiffs' failure reasonably to mitigate their alleged damages.

### EIGHTH AFFIRMATIVE DEFENSE

50.    The Complaint and the claim for breach of the implied covenant of good faith and fair dealing are barred because Plaintiffs seek to use the implied covenant to create obligations beyond and/or inconsistent with the express terms of a contract.

### NINTH AFFIRMATIVE DEFENSE

51.    The Complaint and each claim for relief therein are barred by the applicable statute of limitations.

### TENTH AFFIRMATIVE DEFENSE

52.    The Complaint and each claim for relief therein are barred by a failure of consideration.

### ELEVENTH AFFIRMATIVE DEFENSE

53.    Any alleged obligation of Defendants to perform under the contract as alleged in the Complaint has been excused by Plaintiffs' own material breaches of contract.

### TWELFTH AFFIRMATIVE DEFENSE

54.    Any alleged obligation of Defendants to perform under the contract alleged in the Complaint has been excused by Plaintiffs' prevention of such performance.

### THIRTEENTH AFFIRMATIVE DEFENSE

55.    Any alleged obligation of Defendant to perform under the contract as alleged in the Complaint is excused or suspended because the intended object, effect and purpose of said agreement have been totally or partially frustrated.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

## FOURTEENTH AFFIRMATIVE DEFENSE

56.     The Complaint and each claim for relief therein are barred by the Statute of Frauds.

## FIFTEENTH AFFIRMATIVE DEFENSE

57.     Defendants cannot anticipate all affirmative defenses that may be applicable. Accordingly, Defendants reserve the right to assert additional affirmative defenses.

## COUNTERCLAIM
### (For Declaratory Relief)

By way of further answer and as a Counterclaim against Plaintiffs, Anhelo and Cerralvo allege as follows:

58.     Counterclaimant Anhelo is a Delaware limited liability company.  The members of Anhelo, LLC are JoMei Chang and Dale Skeen, individuals who are citizens of the State of California and reside in San Mateo County, California.

59.     Counterclaimant Cerralvo is a Delaware limited liability company.  The members of Cerralvo, LLC are JoMei Chang and Dale Skeen.

60.     Cerralvo Mexico is a Mexican limited liability company, which owns real estate consisting of approximately 2,000 acres, more or less, located in the Municipality of La Paz, State of Baja California, Mexico, and known as "Rancho Vista Cerralvo."

61.     Counterclaimants are informed and believe, and on that basis allege, that counter-defendant RVC Corporation is a Colorado corporation with its principal place of business in the State of Colorado.

62.     Counterclaimants are informed and believe, and on that basis allege, that counter-defendant Legato Development, LLC is a Delaware limited liability company with its principal place of business in the State of Colorado, and that the members of Legato are natural persons who are residents and citizens of the State of Colorado.

63.     Anhelo, Cerralvo, Legato and RVC entered into an agreement dated September 23, 2005 (the "Purchase Agreement"), a true and correct copy of which is attached as Exhibit A hereto, and the terms of which are incorporated herein by reference.

Case No.
CV 08 0975                DEFENDANTS' ANSWER AND COUNTERCLAIM FOR
DECLARATORY RELIEF

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

64.     The Purchase Agreement included an Option, granted to Legato, to purchase all ownership interests in Cerralvo Mexico on the terms and conditions set forth therein. Legato had the right to exercise the Option during the period commencing on the date of the closing under the Purchase Agreement and continuing through and including the date one (1) year after the date of the closing (the "Option Period"). The Purchase Agreement required Legato to provide Anhelo with written notice of the exercise during the Option Period.

65.     By letter dated September 21, 2006, Legato informed Anhelo that it was exercising the Option. Under the terms of the Option, the closing of the transaction contemplated by the Option (the "Closing") had to occur within sixty (60) days of the Option Exercise Date, as determined in accordance with the Purchase Agreement.

66.     Legato sent Anhelo and Cerralvo a communication dated November 11, 2006, in which it demanded that they perform various tasks or provide information prior to Closing. This request was contrary to the express terms of the Option.

67.     On or about November 14, 2006, counsel for Anhelo and Cerralvo sent a letter to Counterdefendants, in which he provided assurances on behalf of Anhelo and Cerralvo of their intention to comply with their obligations at Closing pursuant to the Purchase Agreement and Option and requested the time and place of Closing. Counterclaimants did not respond to this letter until November 22, 2006, by which time the contractual Closing deadline under the Option had passed.

68.     Counterclaimants were prevented from a timely Closing under the Option because of Counterdefendants' failure to notify counterclaimants of a time and place of Closing, their wrongful imposition of conditions on Closing that were contrary to the terms of the Purchase Agreement and Option, and their failure otherwise to perform the conditions required of them pursuant to the Purchase Agreement and Option.

69.     Counterclaimants are informed and believe, and on that basis allege, that Counterdefendants were not ready, willing and able to Close in the time required by the Option because, among other reasons, they did not have funds committed necessary to Close within the time required by the Option.

- 9 -

**CLAIM FOR DECLARATORY RELIEF**

70.     Counterclaimants incorporate by reference, as though fully set forth herein, the allegations of paragraphs 58 through 69 above, inclusive.

71.     An actual controversy now exists between Counterclaimants and Counterdefendants concerning their respective rights, duties and obligations under the Purchase Agreement and Option, in that Counterclaimants assert that Counterdefendants materially breached the Purchase Agreement and Option by failing to Close in the time required by the Option, by wrongfully imposing conditions and making demands on Counterclaimants that were contrary to the terms of the Purchase Agreement and Option, by failing to confirm a time and place of Closing and by failing to tender performance of their obligations under the Option within the time required.  Counterclaimants assert that the Option has expired and Counterdefendants have no rights thereunder and no interest of any kind in Cerralvo Mexico or Rancho Vista Cerralvo.  Counterdefendants dispute these contentions.

**PRAYER**

WHEREFORE, Anhelo and Cerralvo pray for judgment on Plaintiffs' Complaint as follows:

1.     That Plaintiffs take nothing by way of their Complaint herein and that judgment thereon be entered for Defendants;

2.     That Defendants be awarded their attorneys' fees and costs of suit herein; and

3.     That Defendants be awarded such other and further relief as the Court may deem just and proper.

WHEREFORE, Anhelo and Cerralvo pray for judgment on their Counterclaim as follows:

4.     For a judicial determination and declaration, pursuant to 28 U.S.C. § 2201, of the parties' respective rights, duties and obligations under the Purchase Agreement and Option, that the Option has terminated and that Counterdefendants Legato and RVC, and their successors, assigns and anyone acting by or through them, have no rights under the Option, no right, title or interest of any kind, equitable or legal, in Cerralvo Mexico and Rancho Vista Cerralvo, and no entitlement to specific performance of the Option or any other relief of any kind under the

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 10 -

DEFENDANTS' ANSWER AND COUNTERCLAIM FOR
DECLARATORY RELIEF

1   Purchase Agreement and Option; and

2       5.      That Counterclaimants be awarded their attorneys' fees and costs of suit herein;

3   and

4       6.      That Counterclaimants be awarded such other and further relief as the Court may

5   deem just and proper.

6   DATED:      March 18, 2008                SHARTSIS FRIESE LLP

7

8                                            By: _Tracy Salisbury_____

9                                                 TRACY SALISBURY

10                                           Attorneys for Defendants
                                             ANHELO, L.L.C. and CERRALVO, L.L.C.

11  7647\001\JBYRD\1499146.1

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 11 -

DEFENDANTS' ANSWER AND COUNTERCLAIM FOR
DECLARATORY RELIEF

# EXHIBIT A

## PURCHASE AGREEMENT

THIS AGREEMENT is entered into this 23rd day of September, 2005, by and between RVC Corporation, a Colorado corporation and Legato Development, LLC, a Delaware limited liability company (collectively "Legato") and Anhelo, LLC, and Cerralvo, LLC, both US limited liability companies formed for the sole purpose of this Agreement and acquiring the Property (collectively "Anhelo").

### WITNESSETH:

WHEREAS, Anhelo are the holders of all the ownership interests (the "Ownership Interest") of Cerralvo Desarrollador, a Sociedad de Responsabilidad Limitada de Capital Variable formed under the laws of Mexico (the "Company") for the single purpose of acquiring the Property; and

WHEREAS, Legato have entered into agreements to purchase certain real property in the State of Baja California Sur, Mexico, from Rancho Vista Cerralvo, S.A. de C.V.; Ricardo Perez Razura; and Alejandro Menchaca Garzá including all successors or assigns (collectively "Property Sellers") more specifically described in Exhibit A attached hereto and incorporated herein by reference (the "Property"); and

WHEREAS, Legato desires to have the Company purchase the Property; and

WHEREAS, Legato desires to cause to assign, to the Company, its rights under the contract to purchase the Property (as amended, the "Purchase Contract") from the Property Sellers, in order to induce Anhelo to fund the purchase price of the Property under the Purchase Contract and to grant to Legato an option to purchase the Ownership Interest in the Company on the terms set forth herein; and

WHEREAS, Anhelo desires to provide funds to enable the Company to purchase the Property and to grant Legato an option to purchase the Ownership Interest on the terms set forth herein;

NOW, THEREFORE, in consideration of the premises and of the mutual agreements hereinafter contained, the parties hereto do hereby agree as follows:

### SECTION 1.    DEFINITION OF CERTAIN TERMS.

"Ownership Interest" shall have the meaning set forth in Section 3.2.

1.2 "Closing" shall mean the purchase by the Company of the Property and the funding by Anhelo to the Company to enable the Company to pay the Purchase Price for the Property.

.3 "Closing Date" shall mean the time and date of the Closing.

.4 "Knowledge" of Legato as used in this Agreement shall mean the actual



knowledge of the shareholders, directors, members, managers, officers and partners, as applicable, of Legato.

    1.5 "Material Effect", as used in this Agreement, shall mean a material and adverse effect on the assets, business, operations or financial condition of the Company.

### SECTION 2.    SALE AND PURCHASE OF OWNERSHIP INTEREST.

    Subject to all of the terms and conditions of this Agreement in reliance upon the respective representations, warranties and agreements made by the parties hereto, Anhelo will:

    (a) On or before September 27, 2005 wire transfer funds (the "Initial Funding Amount") in the amount of Five Million Three Hundred Fifty Thousand Dollars ($5,350,000.$^{00}$), plus or minus adjustments for purchaser closing costs, transfer taxes and other credits and adjustments, if any, set forth in the Purchase Contract relating to the purchase of the Property, to an escrow account at First American Title Insurance Company ("Title Company") established in connection with the purchase of the Property, with such funds to be held in escrow and disbursed pursuant to the terms of this Agreement and the Escrow Agreement between the Company and the Title Company.

    (b) comply with Anhelo's other obligations hereunder to be complied with at or before Closing; and

    (c) allow Initial Funding Amount to be used for the following purpose (i) $5,300,000.00 to Property Sellers, (ii) $50,000.00 to First American Tile for title policy, (iii) $22,500.00 to Notario for filing fees, recordation of option and transfer of deed and other work related to Property, (iii) $35,000.00 to pay legal fees of Legato related to Agreement and Property transaction, and (iv) $10,000.00 in Legato miscellaneous travel and administrative expenses.

In addition, at or before Closing, Legato (i) shall assign, or shall cause to assign, to the Company the Purchase Contract and all rights under the Purchase Contract free and clear of all claims and liens, (ii) obtain the consent of the Property Sellers under the Purchase Contract to the assignment of the Purchase Contract to the Company (the "Property Sellers Consent").

### SECTION 3.    REPRESENTATIONS AND WARRANTIES OF LEGATO.

Legato represents and warrants to Anhelo as follows

    3.1 Legato. Each entity comprising Legato is a corporation or limited liability company duly organized, validly existing and in good standing under the laws of the State of its formation. Legato has all requisite company power to enter into this Agreement and to perform

-2-



its obligations under this Agreement. This Agreement has been duly authorized, executed and delivered by Legato and constitutes a legal, valid and binding obligation of Legato and is enforceable against Legato. The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby by Legato will not violate any provision of, or constitute a default under, any contract or other agreement to which Legato or the Company is a party or by which either of them is bound, or conflict with its Certificate of Incorporation or Bylaws, other than violations, defaults or conflicts which would not have a Material Effect or materially affect the ability of Legato to consummate the transactions provided for in this Agreement.

3.2 <u>Title to Properties</u>. Upon assignment of the Purchase Contract by Original Purchaser to the Company, the Company shall have good and merchantable title to all rights under the Purchase Contract, free and clear of any and all liens and encumbrances. Any obligation that Legato has with Property Sellers will not be transferred onto Anhelo nor the Company.

3.3 <u>Finder's Fees</u>. Except for obligations which shall be the sole responsibility of Legato, Legato has not employed or retained any broker, agent, finder or other party, or incurred any obligation for brokerage fees, finder's fees or commissions with respect to the transactions contemplated by this Agreement, or otherwise dealt with anyone purporting to act in the capacity of a finder or broker with respect thereto whereby the Company or Legato or Anhelo may be obligated to pay such a fee or commission.

3.4 <u>Approvals</u>. Neither the execution and delivery by Legato of this Agreement, nor the consummation by Legato of the transactions contemplated by this Agreement, requires the consent or approval of, or the giving of advance notice by the Legato to, or the registration by Legato with, or the taking of any other action by Legato in respect of, any federal, state or local governmental authority.

**SECTION 4.    REPRESENTATIONS AND WARRANTIES OF ANHELO.**

Anhelo represents and warrants to Legato as follows:

4.1 <u>Entity</u>. Each entity comprising Anhelo is duly organized, validly existing and in good standing under the laws of the State of its formation. Anhelo has all requisite and applicable company power to enter into this Agreement and to perform its obligations under this Agreement. This Agreement has been duly authorized, executed and delivered by Anhelo and constitutes a legal, valid and binding obligation of Anhelo and is enforceable against Anhelo. The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby by Anhelo will not violate any provision of, or constitute a default under, any contract or other agreement to which Anhelo is a party or by which it is bound, or conflict with its Articles of Organization or Operating Agreement, other than violations, defaults or conflicts which would not materially and adversely affect the ability of Anhelo to consummate the transactions provided for in this Agreement.

-3-



4.2 <u>Finder's Fees</u>.  Except for obligations which shall be the sole responsibility of Anhelo, Anhelo has not employed or retained any broker, agent, finder or other party or incurred any obligation for brokerage fees, finder's fees or commissions with respect to the transactions contemplated by this Agreement, or otherwise dealt with anyone purporting to act in the capacity of a finder or broker with respect thereto whereby Anhelo or Legato or the Company may be obligated to pay such a fee or a commission.

4.3 <u>Litigation</u>.    There is no injunction, order or decree of any court or administrative agency or any action or proceeding pending or threatened by or against Anhelo to restrain or prohibit the consummation of the transactions contemplated hereby or to obtain damages which would materially and adversely affect the ability of Anhelo to consummate the transactions provided for in this Agreement.

4.4 <u>Approvals</u>.  Neither the execution and delivery by Anhelo of this Agreement, nor the consummation by Anhelo of the transactions contemplated by this Agreement, requires the consent or approval of, or the giving of advance notice by Anhelo to, or the registration with, or the taking of any other action by Anhelo in respect of, any federal, state or local governmental authority.

4.5 <u>Violation of Law</u>.   Anhelo is not in violation of any applicable law, ordinance, regulation, order or requirement relating to its assets or operations which would have a material adverse effect on the Anhelo or its ability to consummate the transactions provided for in this Agreement.

## SECTION 5.    CONFIDENTIALITY & NON-CIRCUMVENTION

5.1 <u>Anhelo Confidentiality & Non-circumvention</u>.  During the Option Period, Anhelo hereby agrees that he or she will not communicate with, or otherwise contact, or consummate or be involved in any transactions relating to the Legato project with: (i) Sellers of Property and any of the real estate that will comprise the Legato project or any of their employees, partners, shareholders, representatives or affiliates, (ii) any persons identified by the Legato as current or potential strategic partners, vendors, service providers, contractors or key personnel, without the express prior written consent of Legato.

## SECTION 6.    ADDITIONAL AGREEMENTS.

6.1 <u>Conduct of Business in Ordinary Course</u>.  From the date hereof to the Closing, except as contemplated by this Agreement, Anhelo covenants that, unless the prior written consent of Legato is obtained it will not take any action which would result in a violation of any of the following proscriptions:

(a)  Anhelo shall not engage in or carry out any business activities, other than those activities reasonably necessary or desirable to carry out the transactions contemplated by this Agreement;

-4-



(b) Anhelo will not incur any indebtedness or obligation and will not enter into any contracts, agreements, or undertakings; issue or agree to issue units of ownership in Anhelo interest in Agreement or Property; hire or enter into any agreement to hire or retain the services of any officer or employee not directly related to or identified in the Agreement without written approval of Legato.

6.2  <u>Approvals</u>.  If any such filing is required, Legato and Anhelo shall each use all reasonable efforts to file any notices, reports or other filings required by any governmental authority in connection with the transactions contemplated by this Agreement.

6.3  <u>Inform of Litigation</u>.  During the period from the date of this Agreement to the Closing Date, each party will promptly inform the other party in writing of any litigation commenced against such party in respect of the transactions contemplated by this Agreement.

6.4  <u>Option Period Covenants</u>.  During the Option Period (hereinafter defined), Anhelo covenants and agrees as follows:

(a)  Anhelo shall retain ownership of the entire Ownership Interest. Anhelo shall not permit the Company to issue to any person other than Anhelo any ownership interest in the Company or any options, warrants, rights, agreements, contracts, calls, commitments or demands of any character obligating the Company to issue any additional interests or to redeem any Ownership Interest or securities, including securities convertible into or evidencing the right to purchase any Ownership Interest or other securities of the Company.

(b)  Anhelo shall not permit the Company to (i) engage in any business other than the acquisition and holding of the Property (ii) to hold or acquire any assets (except for the Property), or (iii) to enter into any contracts or agreements or incur any liabilities, whether accrued, absolute, contingent or otherwise (other than obligations relating directly to the acquisition and ownership of the Property).

(c)  Anhelo shall not take any actions to cause or permit the Company to sell, assign, encumber, or otherwise transfer, in any manner, either directly or indirectly, any right, title or interest in or to the Property, except in regards with the subdivision of the Anhelo Lot to Anhelo.

(d)  Anhelo shall cause the Company to file any tax returns and pay any taxes in any jurisdiction in which the Company is required to file a return or pay taxes.



(e) Not less than ninety percent (90%) of the beneficial ownership interests in the Company shall be held by Anhelo and Dale and Joni Skeen.

(f) Upon completion of the final Operating Agreement of Company and for each entity related to Property, Anhelo shall provide a copy of the same to Legato.

(g) Company shall not acquire any assets other than the Ownership Interest or engage in any business other than owning and holding the Ownership Interest without the written approval of Legato.

(h) Anhelo shall cause to be included in its operating agreement provisions for appointment of an independent bankruptcy officer who must approve (and whose authority is limited to the approval of) the filing of any bankruptcy by Anhelo and covenants that Anhelo shall not engage in any business other than acquisition and holding of the Ownership Interest; provided that Legato shall pay the fees, costs or expenses of engaging the person or persons who will serve as the bankruptcy officer.

## SECTION 7.    CONDITIONS TO ANHELO'S OBLIGATION TO CONSUMMATE THE TRANSACTIONS.

The obligations of Anhelo at the Closing hereunder are subject, at the Anhelo 's election, to the satisfaction prior to the Closing Date of the conditions set forth below. Notwithstanding the failure of any one or more of such conditions, Anhelo may nevertheless proceed with Closing without satisfaction, in whole or in part, of any one or more of such conditions and without written waiver. To the extent that as of the Closing Date Anhelo has knowledge of the failure of any of such conditions or the breach by Legato of any of the representations or warranties contained in this Agreement and nevertheless proceeds with Closing, Anhelo shall be deemed to have waived for all purposes any rights or remedies it may have against Legato by reason of the failure of any such condition or the breach of any such representation or warranty; provided that Anhelo by proceeding with Closing shall not be deemed to have waived any rights or remedies it may have against Legato by reason of the breach of any representation or warranty as to which the Anhelo does not have knowledge as of the Closing Date.

7.1 Covenants Performed. Legato shall have performed in all material respects all of its covenants and agreements contained herein which are required to be performed by it on or prior to the Closing Date.

-6-



7.2 <u>Representations and Warranties</u>.  The representations and warranties of Legato contained in Section 3 hereof shall be true in all material respects on and as of the Closing Date as though made on the Closing Date.

7.3 <u>Officer's Certificate</u>.  Legato shall have delivered to Anhelo a certificate signed by one of its duly authorized officers, dated the Closing Date, to the effect stated in Sections 7.1 and 7.2 hereof.

7.4 <u>Purchase Contract</u>.  Legato, as applicable, shall have assigned to the Company the Purchase Contract and all rights under the Purchase Contract, the Purchase Contract shall be in full force and effect on the date of Closing, and Anhelo shall be satisfied in its sole discretion with the results of its due diligence investigation relating to the Property, including, without limitation, the status of title and the title policy to be issued upon closing under the Purchase Contract, the status of environmental matters relating to the Property, the terms and provisions of the Purchase Contract, the physical condition of the Property, access to the Property and such other matters as Skeen deems appropriate.

7.5 <u>Legato Obligations Under Purchase Contract</u>.  The Legato under the Purchase Contract shall have (i) given the Legato Consent (including the certification of no defaults or waiver of defaults) and (ii) complied with all material agreements and obligations of such Legato under the Purchase Contract to be complied with or performed at or before the closing under the Purchase Contract.

7.6 <u>Title Policy</u>.  The Title Company is unconditionally committed, subject only to payment of premiums and other costs, to issue a title policy in favor of the Company insuring the Company is the owner of fee simple title to the Property in form and substance acceptable to Anhelo.

**<u>SECTION 8.</u>    CONDITIONS TO LEGATO'S OBLIGATION TO CONSUMMATE THE TRANSACTION.**

The obligations of Legato at the Closing hereunder are subject, at Legato's election, to the satisfaction on or prior to the Closing Date of the conditions set forth below, Notwithstanding the failure of any one or more of such conditions, Legato may nevertheless proceed with Closing without satisfaction, in whole or in part, of any one or more of such conditions and without written waiver.  To the extent that as of the Closing Date Legato has knowledge of the failure of any of such conditions or the breach by Anhelo of any of the representations or warranties contained in this Agreement and nevertheless proceeds with Closing, Legato shall be deemed to have waived for all purposes any rights or remedies it may have against Anhelo by reason of the failure of any such condition or the breach of any such representation or warranty; provided that Legato by proceeding with Closing shall not be deemed to have waived any rights or remedies it may have against Anhelo by reason of the breach of any representation or warranty as to which the Legato does not have knowledge as of the Closing Date.

-7-



8.1 <u>Covenants</u>. Anhelo shall have performed in all material respects all of its covenants and agreements contained herein which are required to be performed by Anhelo prior to the Closing Date;

8.2 <u>Representations and Warranties</u>. The representations and warranties of Anhelo contained in Section 4 hereof shall be true in all material respects on and as of the Closing Date as though made on the Closing Date;

8.3 <u>Memorandum of Option</u>. Anhelo shall have executed and delivered into escrow for recordation, a memorandum of option or other document to be prepared and provided by Legato (the "Memorandum of Option") for the purpose of putting third parties on notice of the existence of the Option (hereinafter defined).

## SECTION 9.    CLOSING.

9.1 <u>Closing</u>. The Closing shall take place in escrow at the offices of the Title Company or designated Notary Public or Notario in LaPaz on or before September 27, 2005, or on such other date at a time and place fixed by mutual written consent of the parties. For purposes of this Agreement, Closing shall mean the formalization of the transfer of the Property to the Company from it's lawful owner, by means of the execution of a public deed granted before a notary public designated by Anhelo in form and substance acceptable to Anhelo and Legato.

9.2 <u>Legato's Obligations at Closing</u>. At or before the Closing, Legato shall deliver to Anhelo the following items:

(a) the officer's certificate described in Section 7.3;

(b) an assignment and assumption by Legato or Original Purchaser, as applicable, of the Purchase Contract to the Company; and

(c) the Legato Consent.

9.3 <u>Anhelo's Obligations at Closing</u>. At the Closing, Anhelo shall:

(a) authorize the release of, and cause the Title Company to release, the Initial Funding Amount described in Section 2 to be held in escrow by the Title Company to fund the purchase by the Company of the Property and the Use of Funds as described in Section 2 (c) when all title requirements have been satisfied by Legato under the Purchase Contract to the satisfaction of the Title Company pursuant to an escrow agreement approved by Anhelo. Such escrow agreement will set forth the obligation of the Title Company to withhold any income tax resulting from the

-8-



transfer of the Property to the Company and directly provide those funds to the notary public so designated; and

    (b)  deliver the officer's certificate described in Section 8.3;

    (c)  execute and deliver to escrow for recordation the Memorandum of Option;

    (d)  if not previously executed, execute and deliver an assumption of Legato's obligations under the Purchase Contract (as amended by the Contract Amendment); and

    (e)  For Anhelo to authorize the release of the funds kept in escrow, it shall be required that the Notary Deed whereby the Company acquires title to the Property is completely signed by all Property Sellers and the Notary.

## SECTION 10.    INDEMNIFICATION.

10.1 <u>Legato's Indemnity</u>. Subject to the provisions of this Section 10 and Section 11, Legato from and after the Closing Date shall indemnify and hold Anhelo harmless from and against any and all damage, loss, cost, obligation, claim or liability, including taxes, and all expenses (including interest, penalties, and attorneys' and accountants' fees and disbursements but reduced by any tax savings, benefits or offsets to which any party shall be entitled directly or indirectly by reason thereof) (collectively "Damages") incurred by Anhelo resulting from (i) Legato's misrepresentation, breach of warranty or failure to perform any covenant or agreement made by Legato in or pursuant to this Agreement (except for Damages resulting from any misrepresentation, breach of warranty or non-fulfillment or failure to perform any covenant or agreement known to Anhelo at Closing) and (ii) any activities of Legato on the Property and any actions of Legato taken with respect to the Property after the Closing Date pursuant to Section 14 below.

10.2 <u>Anhelo's Indemnity</u>.    Anhelo from and after the Closing Date shall indemnify and hold Legato harmless from and against any Damages incurred by Legato resulting from Anhelo's misrepresentation, breach of warranty or failure to perform any covenant or agreement made by Anhelo in or pursuant to this Agreement (except for Damages resulting from any misrepresentation, breach of warranty or non-fulfillment or failure to perform any covenant or agreement known to Legato at Closing).



**SECTION 11.   SURVIVAL OF COVENANTS, AGREEMENTS, REPRESENTATIONS AND WARRANTIES.**

The rights of the parties hereto to initiate any action for breach of any representation, warranty, covenant or agreement made by Legato, the Company or Anhelo hereunder or pursuant hereto or in connection with the transactions contemplated hereby shall survive the Closing Date and the Option Closing and shall continue in full force and effect without contractual time limitation.

**SECTION 12.   EXPENSES.**

Except as provided below in this Section 12 or in Section 14, each of the parties hereto agrees to pay, without right of reimbursement from the other, the costs incurred by it incident to the performance of its obligations hereunder, whether or not the transactions contemplated by this Agreement shall be consummated, including, without limitation, those costs incident to the preparation of this Agreement, and the fees and disbursements of legal counsel, accountants and consultants employed by the respective parties in connection with the transactions contemplated by this Agreement. Notwithstanding the foregoing, in the event Closing does not occur due to any cause other than the failure of Anhelo to comply with its obligations hereunder, Legato agrees to reimburse Anhelo for all actual and documented costs incurred in connection with this Agreement and the transaction contemplated hereby, including, without limitation, reasonable attorneys' fees and out of pocket expenses.

**SECTION 13.   TERMINATION, MODIFICATION OR WAIVER.**

13.1 _Termination._ This Agreement may be terminated by either Anhelo or Legato upon written notice to the other if the Closing shall not have occurred by September 27, 2005 (or such later date as may be agreed upon in writing by the parties). In addition to the foregoing, in the event closing of the purchase by the Company of the Property pursuant to the Purchase Contract does not occur on or before September 27, 2005 through no fault of Anhelo, this Agreement shall automatically terminate without further action by Anhelo or Legato and neither party shall have any further obligations to the other hereunder. Termination pursuant to this Section 13.1 shall be without liability of either party to the other party and, upon such termination, the funds deposited by Anhelo with the Title Company shall be returned to Anhelo.

13.2 _Modification._ This Agreement may not be amended or modified except by a writing signed by an authorized representative of the party against whom enforcement of the change is sought. No waiver of the performance or breach of, or default under, any condition or obligation hereof shall be deemed to be a waiver of any other performance, or breach of, or default under, the same or any other condition or obligation of this Agreement.

**SECTION 14.   OPTION TO PURCHASE OWNERSHIP INTERESTS**. In consideration of the covenants and agreements of Legato hereunder, Anhelo hereby grants to Legato, subject to the terms and conditions set forth in this Section 14, an option (the "Option") to purchase all, but not less than all, of the Ownership Interest in the Company on the following terms:

-10-



14.1 <u>Option Period</u>. Legato shall have the right to exercise the Option during the period (the "Option Period") commencing on the date of Closing under this Agreement and continuing through and including the date which is one (1) year after date of Closing.

14.2 <u>Purchase Price</u>. The purchase price (the "<u>Purchase Price</u>") for the Ownership Interests in the Company shall be as follows:

(a) <u>Cash Purchase Price</u>. A cash payment (the "Cash Purchase Price") in an amount equal to the sum of the Initial Funding Amount <u>plus</u> all Acquisition and Holding Costs (as hereinafter defined) <u>plus</u> an amount which, when calculated on an actuarial method, would result in a return to Anhelo of Twenty (20%) per annum on the foregoing amounts from the date or dates such amounts were advanced or paid by Anhelo. For purposes of this Agreement, the term "Acquisition and Holding Costs" shall mean the aggregate amounts, exclusive of the Initial Funding Amount, advanced by Anhelo in connection with Anhelo's acquisition, holding or transfer to Legato of the Ownership Interest or the Property, including, without limitation, all transfer taxes, real estate taxes, title insurance fees and premiums, legal fees, maintenance expenses and filing or transfer fees. The Cash Purchase Price shall be paid by Legato to Anhelo in cash at the Option Closing (hereinafter defined in paragraph 14.4).

(b) <u>Land Subdivision and Title Transfer</u>. In addition to the cash purchase price, Anhelo shall be entitled to receive additional compensation (the "Additional Purchase Price") in the form of a subdivided lot described in the attached Exhibit B (the "Anhelo Lot") under the following terms and conditions:

(i)    Anhelo's use of Anhelo Lot shall be subject to all covenants, conditions and restrictions, architectural controls, restrictions on construction materials, restrictions on use of lots, limitations on use of Developer approved contractors and all marketing and resale limitations imposed with respect to such lots pursuant to the governing documents recorded by Legato and applicable to all similarly situated single family residential lots within the Development. A variance can be obtained through written approval from Legato. Any approvals required by Legato will not be unreasonably withheld or delayed.

(ii)    The Anhelo Lot shall be granted with the right, at the Anhelo's sole discretion, to further subdivide, subject to the



restrictions and conditions required in the Mexico government approved Master Plan of the development, into a maximum of eight (8) single family lots.

(iii)     Up to three lots of the Anehlo Lot, to be developed for the use and ownership of the Skeen family and related parties (hereinafter referred to as "Skeen Estate Lots") shall be exempt from the architectural controls, material restrictions, design conditions, architect and contractor selection of the Development.     Provided however the construction and architecture shall reflect an elegant, understated, outdoor style that captures the essence of the Tuscan style mixed with Mediterranean influences that embraces the use of vernacular building materials (stone, tile, wood, and adobe), methods, colors that blend with the surrounding atmosphere in response to the arid landscape of Baja Peninsula. The design solutions should create buildings that through massing and materials convey a sense of timeless dwellings appropriate for the climate, in a context suited for modern living. Buildings should have a strong indoor-outdoor relationship. The Design Integrity shall utilize materials and construction techniques that convey the sense of permanence and durability (stone & masonry), responsive to local climate and shore line conditions.

(c) <u>Legato Club Membership.</u>  A  Legato  issued  certificate entitling Anhelo to a minimum of one (1) and a maximum of eight (8) individual family memberships in the Legato Beach Club and Golf Course project ("Legato Club Membership"). Such minimum of one (1) and a maximum of eight (8) individual family memberships will be exempted of paying any and all initiation fees. In addition, it is understood and agreed that three (3) of such Legato Club Memberships for the Skeen Estate Lots will be free of any future Legato club dues with exception of utility charges directly associated with the Skeen Estate Lots and any amenity usage charges such as food and beverages and spa use established for all owners at Legato and Legato Club Members. The Legato Club Memberships will always be an appurtenant item of the lots comprising the Anhelo Lots and may be used by the member's family (and guests subject to the established Legato Club rules and regulations established for all owners at Legato, but not renters) and may be passed on to his or her designated heirs without Club-imposed transfer fees of any nature. Subject to the established Legato Club rules & regulations, the Legato Private Club will include full use each of Legato's planned amenities that are subject to change at Legato's reasonable discretion, including but not

-12-



limited to Ernie Els Signature Golf Club golf course, Baja Club social venue, Private Beach Club, Legato Marina, Legato Ranch, Legato Sports Complex, Legato Family Camp, Legato Spa, and any other amenities added to the project. The final number of Legato Club Memberships shall be equal to the number of lots Skeen elects to subdivide pursuant to above Section 14.2 (b).

14.3 <u>Exercise of Option</u>. Legato may exercise the Option, at Legato's sole discretion, to purchase the Ownership Interest by providing written notice to Anhelo stating that Legato is exercising such Option at any time during the Option Period. If Legato provides such notice, the date such notice is given to Anhelo, as determined pursuant to this Agreement, shall be hereinafter referred to as the "<u>Option Exercise Date</u>". If no notice is given by Legato to the Anhelo during the Option Period exercising the Option granted hereunder, the Option granted hereunder shall automatically terminate without further action of Anhelo or Legato.

14.4 <u>Closing</u>. If Legato exercises the Option by providing notice to Anhelo during the Option Period, the closing of the purchase and sale hereunder (the "Option Closing") shall take place at the office of counsel for Legato (or at such other place as the parties mutually agree), within sixty (60) days after the Option Exercise Date. At the Option Closing, (i) Legato shall deliver to Anhelo the Cash Purchase Price, in cash, and (ii) Anhelo shall sign an assignment assigning the Ownership Interest to Legato and shall take such other actions and deliver such other documents as may be necessary or desirable to transfer the Ownership Interest to Legato. Legato's obligation to close at the Option Closing shall be subject to Legato obtaining, at Legato's expense, an updated title policy insuring that the Company owns the Property with no exceptions other than those contained in the title policy issued to the Company at Closing. On or before Closing, the Company will subdivide the Anhelo Lot and transfer it to Anhelo or Anhelo's designee and will grant an easement on the Property to the Anhelo Lot so as to allow vehicular access to and from the Anhelo Lot from and to public access, as reasonably required.

In addition, Legato will provide utility infrastructure to Anhelo Lot and access/usage of existing beach house prior to new Legato beach house is completed.

14.5 <u>Assignment/Pledge of Ownership Interests or Property</u>. Anhelo represents and warrants that Anhelo shall not, and will not permit the Company to, while this Option is in effect and without the prior written consent of Legato, (i) assign, transfer, pledge, or grant a security interest in any or all of the Ownership Interest in the Company, (ii) liquidate or dissolve the Company or permit the Company to mortgage, assign, sell, transfer or encumber the Property or (iii) alter, improve or change in any material way the physical condition of the Property. ,

14.6 <u>Termination of Option</u>. The Option granted hereunder, shall automatically terminate if Legato does not notify Anhelo of its election to exercise the Option within the Option Period, in which case Legato and Anhelo will have no further rights or obligations with respect to the Option, as defined in this Section 14..

-13-



14.7 <u>Cooperation</u>. During the Option Period, Anhelo shall cooperate in good faith with Legato's planning entitlement and external infrastructure process and with the undertakings of Legato under the last sentence of Section 14.9 below (provided that Anhelo shall not be obligated to make any commitments, incur any liability or incur any material expenses in connection therewith, unless Legato agrees to reimburse Anhelo for the same). Anhelo shall give such consents as Legato may request from time to time; provided that Anhelo's obligation to give such consents shall not affect Legato's obligations under Section 14.9 below.

14.8 <u>Access</u>. During the Option Period, Legato, its agents, consultants and guests, shall have full access to the Property for purposes of planning and performing studies, surveys and assessments for Legato's proposed development of the Property. Nonetheless, it shall be very clear that Anhelo will have and maintain the legal and physical possession and occupancy of the Property, at all times, until the Option is exercised and completed. Legato with advance notice to Anehlo, shall have use of the Beach House when not in use by Anhelo during Option Period. In the event Legato exercises the Option, Anhelo, shall have use of the Beach House subject to periodic use by Legato until the beach house is removed. Legato shall have the right to employ a caretaker in the ranch house provided no costs or liability occurs to Anhelo.

14.9 <u>Legato Covenants</u>. Legato agrees that it will not take any actions during the Option Period which would adversely affect the Property or the development rights for the Property and will not alter, improve or change in any material way the physical condition of the Property. Legato shall maintain comprehensive general liability insurance covering Legato's activities on the Property during the Option Period of not less than $5,000,000.00 naming Anhelo and the Company as additional insureds. During the Option Period, Legato shall (i) pay all taxes, assessments, maintenance costs and other obligations relating to the Property and all expense incurred by Anhelo in connection with its compliance with Section 14.7 above and (ii) take, at its expense, all reasonable steps required to cause the Property and the Company to comply with any applicable law, ordinance, regulation, order or requirement, if the failure to comply with the same would have a Material Effect, and if Legato fails to do so, Anhelo or the Company may pay the same and recover the costs thereof from Legato.

14.10 <u>Sale to Third Party</u>. During the Option Period, in the event Legato elects to enter into an agreement to sell the Property to an unrelated third party ("Third Party"), Anhelo shall receive, (i) the Anhelo Lot transferred to Anhelo or to Anhelo's designee and a granted easement on the Property to the Anhelo Lot so as to allow vehicular access to and from the Anhelo Lot from and to public access, as reasonably required, (ii) an amount equal to the Cash Purchase Price as described in Section 14.2 (a) herein, (iii) Fifty percent (50%) of all sales proceeds in excess of the Cash Purchase Price received from Third Party of up to One million five hundred thousand and no/100 dollars ($1,500,000.00) and, (iii) one hundred percent of all sales proceeds thereafter. In no event shall the purchase price of the Property by Third Party be less than Three million dollars above the Cash Purchase Price.

During the Option Period, Anhelo shall be entitled to elect to exercise or not a "first right of refusal" option on the Property. The procedure to follow will consist of Legato, within 15 days after receipt of a bona fide offer to purchase the Property (excluding Anhelo Lot),

-14-



Legato will notify Anhelo in writing, with the proof of a purchase contract. Thereafter, Anhelo will be entitled to exercise, within 13 business days after Anhelo has been duly notified of the offer, such an option to purchase the Property with a cash price matching the same terms and conditions as the bona fide offer received. In this case, the actual payment to Legato will be calculated as the purchase price offered by the Third Party, deducting the payment due to Anhelo calculated as described in paragraph 14.10 above. It is further agreed that such payment to Legato by Anhelo shall not exceed One million five hundred thousand and no/100 Dollars US ($1,500,000.$^{00}$ USD).

It is clearly understood and agreed that no sale of Property by Legato will be valid unless (i) Anhelo has been duly notified of any such offer to purchase the Property, and (ii) Anhelo's period of time to exercise the First Right of Refusal has elapsed, without having been exercised.

### SECTION 15.   NOTICES.

15.1 Any notice, request, consent or communication under this Agreement shall be effective only if it is writing and personally delivered or sent by certified mail, postage prepaid, or by recognized overnight courier service addressed as follows:

<u>Name:</u>

Legato Development , LLC
1503 Spruce Street, Unit 104
Boulder, Colorado 80302

<u>With Copy to:</u>

Diego Covarrubias
Creel, Garcia, Cuellar & Muggenburg
Paseo de los Tamarindos 60
Mexico City, Mexico 05120

And

Rick Kirkbride
Paul, Hastings, Janofsky & Walker, LLP
Resort, Restaurant & Recreation Practice Group
515 Flower Street 25th floor
Los Angeles, CA 90071

-15-



If to Anhelo:

750 Menlo Ave, Suite 380
Menlo Park, CA 94025

With Copy to:

Cossu y Saenz
Av. Cabo San Lucas esq. Retorno de Obregón
23450, Cabo San Lucas, Baja California Sur
Attn: Francis E. Cossu Musi and/or Mauricio
Saenz

or such other persons and/or addresses as shall be furnished in writing by any such party, and shall be deemed to have been given as of the date so personally delivered or received.

### SECTION 16.   PARTIES IN INTEREST AND ASSIGNMENT.

16.1 Binding.   This Agreement is binding upon and is for the benefit of the parties hereto and their respective successors and assigns.  This Agreement is not made for the benefit of any person, firm, corporation or association not a party hereto (or his or its respective heirs, executors, administrators or assigns), and no person, firm, corporation or association other than Legato (or its successors or assigns) and Anhelo (or its successors or assigns) shall acquire or have any right under or by virtue of this Agreement.

16.2 Assignment.   This Agreement may not be transferred or assigned by Anhelo except by a written agreement executed by Legato.

### SECTION 17.   ENTIRE AGREEMENT.

This Agreement embodies the entire agreement between the parties hereto and there are no agreements, representations or warranties between the parties other than those set forth or provided herein.

### SECTION 18.   EXECUTION IN MULTIPLE ORIGINALS.

This Agreement may be executed in multiple originals, each of which shall be deemed an original.

### SECTION 19.   HEADINGS.

The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

### SECTION 20.   GOVERNING LAW AND JURISDICTION.

This Agreement shall be construed and enforced in accordance with the laws of the jurisdiction of and the competent courts in the State of Colorado, except to the extent applicable law requires that any matters relating to or arising from this Agreement be governed by the laws and subject to the jurisdiction of the competent courts of Mexico.

-16-



### SECTION 21.   GENDER.

Words of any gender used in this Agreement shall be held and construed to include any other gender, and words in the singular number shall be held to include the plural, unless the context otherwise requires.

### SECTION 22.   INVALIDITY, ILLEGALITY AND UNENFORCEABILITY.

In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

[SIGNATURE PAGE FOLLOWS]

-17-



IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first above written.

LEGATO:

ANHELO:

RVC Corporation

Anhelo, LLC

By: Danny Mostajo
Print Name: DANNY MOSTAJO
Title: PRESIDENT

By: Jo Mei Chang
Print Name: JoMei Chang
Title: Manager

By: Dale Skeen
Print Name: Dale Skeen
Title: Manager

Legato Development, LLC

Cerralvo , LLC

By: Danny Mostajo
Print Name: DANNY MOSTAJO
Title: PRESIDENT

By: Jo Mei Chang
Print Name: Jo Mei Chang
Title: Manager

By: Dale Skeen
Print Name: Dale Skeen
Title: Manager

-18-

**EXHIBIT A**

**[PROPERTY DESCRIPTION]**

Property known as parcel "A", Parcel "B", Parcel "C" is located at Polygon No. 3 in the land area identified as "El Saltito", containing a total surface area of 31-62-72, located in the Municipality of La Paz, State of Baja California Sur, Mexico.

Parcel A of the Cerralvo Property is identified with cadastral number 1-01-046-0004.
Parcel A of the Cerralvo property is duly recorded in the Public Property Registry of the Municipality of La Paz, State of Baja California, Mexico, under the First Section, entry No 000272, volume 0000180 dated April 2, 1991.

Parcel B of the Cerralvo Property is identified with cadastral number 1-01-046-0005.
Parcel B of the Cerralvo property is duly recorded in the Public Property Registry of the Municipality of La Paz, State of Baja California, Mexico, under the First Section, entry No 000904, volume 0000288 dated June 6, 2003.

Parcel C of the Cerralvo Property is identified with cadastral number 1-01-046-0001.
Parcel C of the Cerralvo property is duly recorded in the Public Property Registry of the Municipality of La Paz, State of Baja California, Mexico, under the First Section, entry No 000272, volume 0000180 dated April 2, 1991.



**EXHIBIT B**

**[ANHELO LOT]**

The Anhelo Lot will consist of a piece of land of, approximately,
Two Thousand (2,000) foot of beachfront and one thousand (1,000) foot deep inland lot,
with the center of the beach located on the beach shown below.



-20-



This Map indicated the lots covered by Anhelo Lot with red dots.



